Case number five for argument today is United States against Brasher. Ms. Christensen. Good morning, your honors. May it please the court, my name is Joanna Christensen and I represent the 2018 and 2020 transactions when calculating the amount of drugs involved in this case. Of course, the government argues that Mr. Brasher has waived this issue instead of forfeited. Mr. Brasher does not agree. Waiver is intentional and there's no indication in this record that the failure to raise the issue in the district court was intentional. In fact, it was most likely negligent by defense counsel because the issue is fairly plain from the record as it is here. The key is strategy, whether the defense counsel strategically decided not to raise this issue and the government points to potential... Ms. Christensen, before you move beyond waiver, if we agree there's no waiver, would we have to overrule any of our prior cases like the Hernandez case where we have said if a PSR is filed and the pre-sentence investigation report lays out what the guideline calculations are and a defendant objects to doing that, what are the consequences? To some of them, but not all of them, that you can draw a waiver from that. I don't think you would have to overrule that. I think there are several cases, the Jaime Jaime case is probably the primary one where actually that defendant agreed in his plea agreement that an enhancement would apply and the court still found that that was not intentional waiver. And I think that there's still room for that negligence argument even with some of the case law about pre-sentence reports and adoption of pre-sentence reports. In this case, particularly, the pre-sentence report doesn't connect the relevant conduct in the way that the guidelines envision that it should. The pre-sentence report writer did not talk about how they were related, their temporal proximity, their regularity, their similarity. I have a problem with why that should matter. The norm in litigation, even in criminal litigation, is that district judges have to address the issues that the parties contest. So suppose this is just forfeiture. What's wrong with the district court saying the defense hasn't made anything of this relevant conduct issue, so here we go? Judges, actually the Supreme Court said in Shinanang Smith that judges should not and sometimes must not inject issues into a case when the parties don't want them. Your argument to the contrary is that district judges must make particular decisions even when not asked. Why do they have to do that? I'm not sure that's my argument exactly. Well, the judge wasn't asked to decide on relevant conduct. The pre-sentence report makes a recommendation, and the judge just passes it through because nobody asked the judge to look at the issue. So the question I'm asking is why must a judge raise on his own an issue that nobody presented for decision? Well, I have two answers to that. One is there's a reason for their review exists in this court and not in the district court, and it's for situations like that. And secondly, when there is an error that's clear from the record… No, you're not getting my question. My question is why is it error at all for a judge to confine his attention to the issues raised by the lawyers, given the holding of the Supreme Court in Shinanang Smith? It's not necessarily error of the failure to address. The error is the calculation of the relevant conduct that's clear from the record. So the judge certainly, no judge has to sua sponte, raise issues on behalf of either party. But when there is an error in the calculation of the guidelines, the criminal rules of criminal procedure allow a defendant to raise that underplaying error in the court of appeals. And we're not necessarily saying the district court judge has to make arguments on behalf of the defendant or point issues out on behalf of the defendant. But when there's an obvious issue in the district court, we can raise that on appeal. And in this case, it is an obvious issue where you have three separate instances of conduct that are all put together that have such an effect on a defendant's base offense level. Is there anything the district court could have done to prevent an error here? Is there anything? Because the district court asked at the end very specifically a question about the guidelines. It wasn't just a throw away. Is there anything else? But it was pretty specific. Is there any question like that that a district court could ask at the end where there would be waiver from your view? Well, as far as waiver, I think the court might have to ask the specific question. We realize, of course, that that's just not the way sentencing hearings were. Yeah, you could be in there forever. Right, exactly. And that's where it falls back on defense counsel and the potential negligence of a failure to raise the issue by defense counsel is that that's the interplay between the two. The judge did what the judge could have in this case. The problem is a step back with defense counsel's failure to raise the issue, which has been recognized as a reason that it would be plain error review rather than waiver. We're certainly not arguing the full review that otherwise would be applicable here. Ms. Christiansen, how do you get around the plain in plain error here in light of our case law? We have a lot of case law that talks about relevant conduct being appropriate. Where you have similarity and regularity between the conduct. And the government has identified here lots of similarity. There may be some differences as well. And if this were de novo review, maybe it would be different. But how do you get around the plain part of plain error given the similarity and regularity with Brasher selling to Krontes at regular intervals? Sure. The Krontes' conduct was not the offense of conviction. So that has to be under relevant conduct. And whether it's similar to the offense of conviction. Not to anything else but the offense of conviction. And the government admits that it's not temporally proximate. So we don't really have that. And they don't really make an argument about regularity. And so it's similarity. And the similarity really is that it was Mr. Brasher involved in drug transactions. And this court has held. Well, it was more than that. It was they all involved meth. The drugs all started from California. The drugs all ended up in southern Illinois. Almost all of the transactions involved pound quantities. So there are multiple things. Again, if this were de novo review, it might be different. But given our case law, given those similarities, how would any error here be plain? I think the similarities are similarities in every case. Every case that ends up in the southern district of Illinois is going to have similar facts. It's going to have a person who's supplying, Mr. Brasher, large quantities. Most distribution chains at some point have large quantities. And methamphetamine is a particular problem, I think, in the southern district of Illinois. We see quite a few cases involving meth from that district. And methamphetamine, as I say in my reply brief, originates 85% of the time in California from Mexico. So these are very broad similarities between this case and every other case. So the real key component is Mr. Brasher himself. That's the argument about similarities. It's just there can't be just the connection to Mr. Brasher. And it's the clear tail wagging the dog situation that we have here. So I see that I am into my rebuttal unless the court has further questions. I'll reserve the remainder of my time. I hope the dog had a heated doghouse. Well, mine do. Were you here for our first case? I was here for the first case. It was a little hard to listen to, actually. Very sad. Mr. Bloodworth. Thank you, Your Honors. May it please the court and counsel. And I can assure the court that we will not engage in a discussion of choke collars in this. But what I would like to discuss is that Mr. Brasher, in the government's assessment, has clearly waived this argument. It's clear from the record in this case that Mr. Brasher. What shows the intentional nature of it? Right, Your Honor, because waiver is intentional. And the best piece of evidence or reflection from this record that shows that it was an intentional waiver is what Mr. Brasher objected to to the PSR. He objected to how the methamphetamine would be calculated but not how much methamphetamine should be attributed to as relevant content. His objection to the PSR was that the methaxyl should be counted on a policy disagreement as a mixture of substance. We have said in some recent case law that there's no longer a bright line rule about this, and that the bright line rule that every objection not raised at sentencing is waived is essentially of the past. So how do you distinguish this case from our case law? If I understand the court's question correctly, it's through what transpired in this sentencing hearing. Mr. Brasher's specific objections, not only to the methamphetamine, but to his probationary status, his objection was that he believed he was not on probation, not when his relevant, his objection was not when his relevant conduct began, which would include or bring in at that time the two-point enhancement, was that he just believed he wasn't. You follow that up with the colloquy between the court and counsel. The district court in this case clearly asked if he was understanding Mr. Brasher's objections correctly, to which Mr. Brasher's counsel reiterated that he was and that his objections were only to the methamphetamine. There's a reason we're stepping away from this bright line because all of these examples show just as much neglect, some arguable incompetence, as they might an intentional waiver. So maybe it would be helpful after you finish answering Judge St. Eve's question to move to the merits. Certainly. And just one more point to Judge St. Eve's question is following that colloquy between the district court and Mr. Brasher's counsel, Mr. Brasher himself acknowledged that he was part of a criminal enterprise, particularly with the Cronces. Mr. Brasher himself, who is no stranger to the federal system, we can see that from his, or no stranger to the criminal justice system, we can see that from his criminal history, conceded in his allocution statement that this conduct. But the question before us is not whether or not Mr. Brasher committed this relevant conduct, but whether the conduct was relevant and sufficiently related to the conviction here. I don't disagree with you, Your Honor, but I think through all of that it shows that there was a concession and a calculated decision to proceed in the manner in which they did and the objections that they raised. And then just very briefly to the point on waiver, there was sound strategic reason to do so, because Mr. Brasher wanted to convince the court that he was truly accepting responsibility. Couldn't you make that argument in every case, though? That seems, if intentional waiver comes about because you want to make sure you're getting the third point, it seems like the government could argue that in every case. It's hard to speak hypothetically, Your Honor, because criminal cases, as we all know. Intentional waiver seems like it has to be something more than that. Otherwise it would get swallowed up in every case. And I understand that there's the potential for that. To see that, just think about what would have happened if Judge Gilbert had said to defense counsel, so do you accept everything in the pre-sentence report except what you're now arguing today? If defense counsel had said yes, that's a waiver. But, of course, that question and answer never happened. That's why this is fuzzy. Maybe we should re-sharpen the line and say unless that happens, it's a forfeiture rather than a waiver. I certainly understand Your Honor's point, and I would agree that that question wasn't asked in that specific direct manner. But it was asked after the district court specifically delineated the amounts involved. The district court asked if there was any objection to those amounts, and affirmatively the defense said there was not. It just means there wasn't an objection. Right, which I think would signal a clear intention or relinquishment of that known right. But be that as it may. On the subject of amounts, is it your position that district court has no obligation to explain how these amounts come to be folded in as relevant conduct? No, I wouldn't say that the district court does not have. What's the source of that obligation? I'm sorry, Your Honor, I don't. You would not say they have no obligation? Well, correct. Because they have some obligation. Yeah, I think the body of case law in 3553A, and all of that requires the district court to explain it. And so that's independent of whether a defendant raises it. Yes, but the level in which the court has to specify, one, its relevant conduct calculations or its reasons for a sentence, depends on a variety of factors. Most of which are not present here, because there was no objection. There was no affirmative statement that they needed clarification on how the court was. What level do you see here where the district court did do what it was obligated to do? I see that the district court listened to objections, ruled on objections, decided those objections, asked if there were any more, and the defendant was sent home. No, no, I'm talking about on the issue of relevant conduct. The district court was faced with uncontroverted facts from the PSR, reiterated those facts in terms of quantity calculations, and then asked if there was any specific objection to those quantity calculations, to which there was none. I think that's what the district court's required to do, and the district court did so here. I thought you just told me that you understand the district court to have some obligation to connect some dots with relevant conduct. I think, depending on how it's raised, and it wasn't raised at all in this specific case, I think there are a lot of variables that could impact how much a district court explains a sentence, or how much a district court explains its relevant conduct calculations. But in this case, there just was no objection. Is your argument that because there was no objection, that just relying on the PSR and incorporating it satisfies that obligation? No, I think that's a variable to consider in how a district court explains. And I addressed this in the government's brief, if you'll give me just a few seconds. I apologize, Your Honor, I can't find where that was in the government's brief. I know that it was mentioned, but my point is that's a variable. That's certainly something that should go into how a district court explains a sentence. But waiver aside, the opposing counsels conceded that, at a minimum, this is forfeiture. And to get to Your Honor's question earlier, we're engaging in a lot of factual discussion, a lot of factual dispute, for lack of a better word. But what's clear is we're engaging in a debate. This court has held that debatable facts in those scenarios doesn't amount to plain error. It's not plain on the record that any error occurred. The government certainly submits, for a lot of the points that Judge St. Eve made, that there was no error, plain or otherwise. But it's the defendant's burden on plain error review to demonstrate that there is. And engaging in this debate about what facts are important in determining temporal proximity or course of conduct illustrates that any error, if any error occurred, which the government submits did not, is not plain. And therefore, the defendant fails on that plain, or Mr. Brasher fails on that plain error analysis. It's an incredibly deferential standard for a reason. And I think it illustrates what Your Honors ask about those factual disputes and those factual colloquies and debate, for lack of a better word. So unless the court has any other questions, the government would rest on its brief on the remaining points and ask the court to affirm the sentence below. Thank you, Counsel. Thank you. Anything further, Ms. Christiansen? Thank you, Your Honor. I think what I perhaps didn't say very well about the distinguishing between what the district court has to do is the difference between making factual findings and legal findings. And we are not challenging the facts. I know that this is a fact-heavy analysis, but I'm not disputing any of the facts that are in the record. They're in the record. Mr. Brasher admitted them. It's whether the court has a duty to make legal findings about the guidelines, which it must consider and correctly calculate, when the facts are not enough to support those legal findings. And the court may adopt the pre-sentence report, but if the pre-sentence report doesn't make adequate findings or adequate connections, then that legal issue may be reversed on plain error. And we've seen cases like that regarding the guidelines. Jaime Jaime and the Hyatt case that are cited in our briefs are both cases where the facts were essentially not disputed in the record. It was whether the court had made the correct legal finding about the guidelines. So in my few seconds left, I would like to talk about counsel's objection to the guidelines, which was based on the Cornell case and the type of methamphetamine, which did border on nearly frivolous because there were lab reports regarding the purity of the meth. And in that case, it does look like negligence rather than intentional decision to waive it. Unless the court has questions, I'd ask to reverse and remand pre-sentencing. Thank you. Thank you very much. The case is taken under advisement.